**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **MICHAEL G. BOBINGER,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:09-CV-103-C |
| | § | ECF |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | Assigned to U.S. Magistrate Judge |

**MEMORANDUM ORDER AND OPINION**

**THIS CASE** is before the court upon Plaintiff's complaint filed June 16, 2009, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on February 22, 2009[1], Defendant filed a brief on March 22, 2010, and Plaintiff filed his reply on April 6, 2010. The parties consented to having the United States magistrate judge conduct all further proceedings in this case on June 24, 2010 (Doc. 4), and January 20, 2010 (Doc. 16). This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be reversed and that this case should be remanded for further administrative proceedings.

---

[1] Plaintiff termed his brief a motion for summary judgment with brief in support. However, as the court had already notified the parties, the court finds the interests of both parties and the interests of judicial economy and conservation of judicial resources will be accomplished by considering and briefing Social Security cases brought pursuant to 42 U.S.C. § 405(g) as appeals, rather than addressing them as cross-motions for summary judgment. Therefore, Plaintiff's motion and brief were treated as his brief in accordance with the briefing scheduling order entered by the court.

# I. STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and for SSI benefits on November 9, 2007, with a protective filing date of November 2, 2007, for the SSI application, alleging disability beginning August 23, 2007. Tr. 13. Plaintiff's applications were denied initially and upon reconsideration. Tr. 13, 69-76, 79-84. Plaintiff filed a Request for Hearing by Administrative Law Judge on June 9, 2008, and this case came for hearing before the Administrative Law Judge ("ALJ") on October 16, 2008. Tr. 13, 432-56. Plaintiff, represented by an attorney, testified in his own behalf. Tr. 437-53. Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 453-54. The ALJ issued a decision unfavorable to Plaintiff on January 28, 2009. Tr. 10-22.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements through December 31, 2009, and that Plaintiff had not engaged in substantial gainful activity at any time since August 23, 2007. Tr. 13, 15. Plaintiff has "severe" impairments, including hydrocephalus status post craniotomy with shunt placement; polysubstance abuse in remission; degenerative joint disease of the knee; and degenerative disc disease of the lumbar spine. Tr. 16. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 19.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were generally credible. Tr. 20.

The ALJ found that Plaintiff could not return to his past relevant work as an accounting clerk. Tr. 21. He noted that Plaintiff was considered a "younger individual" with a high school education plus two years of college. 20 C.F.R. §§ 416.963, 416.964; Tr. 21.

The ALJ found that Plaintiff retained the RFC to perform the full range of sedentary level unskilled work. Tr. 19. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 21.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 5, 2009. Tr. 8. The Appeals Council denied Plaintiff's request and issued its opinion on April 15, 2009, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 1-4. The ALJ's decision, therefore, became the final decision of the Commissioner.

On June 16, 2009, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 21.

### III. DISCUSSION

Plaintiff claims that the ALJ's opinion is not supported by substantial evidence because the ALJ erred in making his credibility determination, his RFC finding does not incorporate all of the limitations imposed by Plaintiff's impairments and is based on incorrect facts, the ALJ failed to consider evidence of Plaintiff's surgery, and the hypothetical question posed to the VE failed to reflect the limitations imposed by Plaintiff's impairments. Plaintiff also claims that the Appeals Council erred by failing to remand the case based on the additional evidence that Plaintiff submitted.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would

allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

A.  **Whether the ALJ erred in making his credibility determination and his RFC determination.**

Plaintiff argues that the ALJ erred in making his credibility determination by misstating certain facts. Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ may consider various factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any palliative measures used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.*

The ALJ may discount subjective complaints of pain as inconsistent with other evidence in the record. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (citing *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991) (citation omitted)). The subjective testimony of Plaintiff must be

weighed against the objective evidence of medical diagnosis. *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987) (citing *Jones v. Heckler*, 702 F.2d 616, 621 n.4 (5th Cir. 1983)). Subjective evidence need not take precedence over objective evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir 1988)). Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence. *Villa*, 895 F.2d at 1024 (citing *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987).

In his opinion the ALJ found that Plaintiff's underlying medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, and he further found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were generally credible. Tr. 20. The ALJ also favorably noted that Plaintiff has an excellent work history. *Id*. The ALJ ultimately found, though, that Plaintiff retained the RFC to perform the full range of unskilled work at the sedentary exertional level. Tr. 19.

Plaintiff argues that the ALJ's indication that Plaintiff has an excellent work history is misleading. The ALJ noted in his opinion that Plaintiff had worked most of his life as a bookkeeper (Tr. 15), that he reported being unable to drive a truck any longer (Tr. 16), that he reported going from being an accountant to mowing lawns, and that he reported other difficulties with keeping a job. (Tr. 19-20). The record demonstrates that the ALJ did not err in noting Plaintiff's work history in making his credibility determination.

Plaintiff argues that the ALJ erred in indicating that Plaintiff's physician noted a two-week recovery period after the October 20, 2008, craniotomy. The ALJ also noted in his opinion that upon discharge after this surgery, Plaintiff was instructed to refrain from serious lifting or heavy activities for two weeks and was on a regular diet, ambulating without assistance. Tr. 18-19.

The court finds that the ALJ did not err in making his credibility determination.

Plaintiff also argues that the ALJ erred in making his RFC finding.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Soc. Sec. Ruling 96-5p (July 2, 1996) ("SSR 96-5p"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996) ("SSR 96-8p") (emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

The claimant has the burden to prove that she is disabled within the meaning of the Social Security Act. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). A physical or mental impairment is in turn defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The existence of an impairment does not in itself establish disability; a claimant is disabled only if he or she is "incapable of engaging in any substantial gainful activity." *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir.1986).

Plaintiff argues that the ALJ's consideration of his use of alcohol and drugs caused the ALJ to unfairly issue a quick decision without considering post-hearing evidence as promised. While the ALJ noted references in the record to previous use of alcohol and drugs, he also noted Plaintiff's testimony that he had not used drugs in six months. Tr. 20. He found Plaintiff generally credible. *Id*. The ALJ found polysubstance abuse in remission among Plaintiff's severe impairments. Tr. 16. As the Defendant notes, the ALJ issued his decision 104 days after the hearing. Plaintiff's allegations fail to demonstrate that he was short-changed by issuance of the decision. Plaintiff

submitted additional evidence after the issuance of the ALJ decision. The Appeals Council considered the evidence, but found no reason to remand.

In his reply, Plaintiff argues that Global Assessment of Functioning ("GAF")[2] score of 55[3] on Axis V indicates that he has more than mild limitations imposed by his mental impairments, which is contrary to the ALJ's RFC finding and which also made application of the Medical Vocational Guidelines ("the Grids") to direct a finding of "not disabled," erroneous, and which made the testimony of a VE necessary.

As an initial matter, the court notes that the psychological consultative examiner's opinion of Plaintiff's GAF score of 55 does not represent a medical opinion regarding any specific limitations imposed by Plaintiff's mental impairment(s). Rather, it represents a tool he used in the course of his examination, diagnosis, and treatment. In any case, "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). The GAF is a diagnostic tool; a medical opinion as to a claimant's GAF is not automatically reflected in any RFC finding, nor does any particular GAF score necessarily correlate to specific limitations imposed by a claimant's mental impairment(s). The ALJ noted in his decision the various reports regarding Plaintiff's mental impairments. The ALJ also compared Plaintiff's reports of symptoms and his subjective complaints with the findings upon examination. The ALJ noted that the state agency medical consultants had opined that Plaintiff's mental impairments resulted in mild functional limitations, with no episodes

---

[2] The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32 ("DSM-IV"). This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id*.

[3] The DSM-IV defines a GAF score of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

of decompensation. Tr. 20. The ALJ found that Plaintiff's psychological and behavioral abnormalities did not preclude the ability to perform unskilled work. *Id.*

Where a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Grids, although they may be used as a framework. Application of the Grids is appropriate "when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999). The ALJ should make an individualized determination of the claimant's ability to perform specific jobs in the national economy where there are nonexertional limitations. *Carry v. Heckler*, 750 F.2d 479, 483 (5th Cir. 1985) (citing *Parris v. Heckler*, 733 F.2d 324, 326 (4th Cir.1984)).

The ALJ did not find nonexertional limitations that would preclude application of the Grids in this case. Plaintiff further argues that the ALJ erred by failing to call a VE to testify in this case.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Plaintiff argues that the RFC fails to reflect all of the limitations imposed by his impairment. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE or into the RFC determination that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* However, the ALJ's determination "must stand or fall with the reasons set forth in the decision." *Newton*, 209 F.3d at 455.

If the ALJ determines that the claimant has a medically determinable mental impairment, he must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a; 416.920a. He is required to evaluate the degree of functional loss resulting from Plaintiff's mental impairments as set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). The ALJ must evaluate the claimant's limitations in four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the part "B" criteria. A five-point scale is used to rate the degree of limitation in the first three of those functional areas. 20 C.F.R. § 416.920a (c)(1)-(4). These four separate areas are deemed essential for work. *Boyd*, 239 F. 3d at 705 (citing 20 C.F.R. § 404.1520a(b)(3)). The written decision of the ALJ must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 416.920a(e)(2). The PRTF represents one way in which such findings may be documented. 20 C.F.R. § 404.1520a(e). After the ALJ rates the degree of functional limitation resulting from any mental impairment(s), the ALJ determines the severity of such impairment(s). 20 C.F.R. § 416.920a(d). If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment "not severe" at step 2 of the sequential evaluation process. 20 C.F.R. § 404.1520a(c)(1). If the ALJ finds that the mental impairment is "severe" under 20 C.F.R. § 404.1520a(c)(1), the ALJ must then determine if it meets or equals a listed mental disorder under 20 C.F.R. Pt. 404, Subpt. P, app. 1,

12.00-12.09 and 20 C.F.R. § 404.1520a(c)(2). If the impairment is severe but does not reach the level of a listed disorder, then the ALJ must conduct an RFC assessment. *Boyd*, 239 F.3d at 705.

In this case the ALJ only found that Plaintiff's mental impairments caused "mild functional limitations," and no episodes of decompensation. The ALJ did not indicate what those specific mild functional limitations were, other than to say that they would preclude Plaintiff to perform unskilled work. The ALJ found Plaintiff's complaints to be generally credible and noted Plaintiff's examination and the treatment of progress notes relating to Plaintiff's mental impairments.

Clearly, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* However, the court is unable to glean from the record what the ALJ meant when he said that Plaintiff's mental impairments resulted in only mild functional limitations. The ALJ did not present or incorporate such limitations into the RFC. The ALJ did not question a VE regarding whether Plaintiff's mental impairments and the "mild functional limitations" imposed therein eroded or otherwise affect the availability of jobs that Plaintiff could perform at the sedentary exertional level. The ALJ did not address the functional requirements of his past relevant work and his ability to perform the functions of sedentary level unskilled work.

As a result, the ALJ's RFC finding at step 3, the evaluation of Plaintiff's past relevant work, and the step 5 determination that Plaintiff can perform work which exists in the national economy are not supported by substantial evidence.

Having considered the ALJ's opinion and the evidence as a whole, the court finds that the ALJ committed errors in making his credibility determination and in formulating the RFC finding. These errors are prejudicial and require a remand for further administrative proceedings. Upon remand, the ALJ should further consider Plaintiff's mental impairments, the limitations imposed therein, his RFC, and the additional evidence submitted after the hearing decision.

The court does not reach Plaintiff's additional claims of error.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court finds that the ALJ erred and that the ALJ's opinion is not supported by substantial evidence in the record, that the Commissioners's decision should be reversed, and that this case should be remanded for further proceedings in accordance with this recommendation.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner denying Plaintiff's application for a period of disability, disability insurance benefits, and supplemental security income is **REVERSED**.

**IT IS FURTHER ORDERED** that this case is **REMANDED**. Upon remand, the ALJ should further consider Plaintiff's mental impairments, the limitations imposed therein, his RFC, and the additional evidence submitted after the hearing decision.

A judgment in accordance with this decision shall be entered.

**SO ORDERED.**

DATED this 24th day of March, 2011.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**